AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>Subject Cellular Telephone 1, a black Motorola smartphone<br>device model G7 with IMEI number 354133102336774; and<br>Subject Cellular Telephone 2, a black Samsung smartphone<br>device model SM-J327T with IMEI 352002094988201. | Case No.<br>21-8290MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _November 30, 2021_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _11/16/21   10:53A_          _____
                                                   *Judge's signature*

City and state: Phoenix, Arizona          Honorable John Z. Boyle, U.S. Magistrate Judge
                                          *Printed name and title*

## ATTACHMENT A

### *Property to be searched*

This search warrant applies to information and items associated with and stored or maintained in or on **Subject Cellular Telephone 1** described as a black Motorola smartphone device model G7 with IMEI 354133102336774 and **Subject Cellular Telephone 2** described as a black Samsung Model SM-J327T smartphone device with IMEI 352002094988201.  Both of the **Subject Cellular Telephones** are currently in the custody of the Federal Bureau of Investigation and located at the FBI Phoenix Field Office, 21711 North 7th Street in Phoenix, Arizona.

This warrant authorizes the forensic examination of both of the **Subject Cellular Telephones** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

The United States intends to search for, and to seize, any items that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2113, Bank Robbery and Incidental Crimes. These violations relate to the activities of Taylor STEWART and her associates, as described in the Affidavit. The items to be searched for and to be seized include information, data, files, and other content from each of the **Subject Cellular Telephones** described in Attachment A pertaining to the following matters:

a) The engagement and involvement of Taylor STEWART and her associates in bank robbery.

b) Communications, messages, emails, conversations, photos, videos, notes, documents, files or other content indicating, identifying, or depicting the clothing, tools, methods, or instruments used to facilitate bank robberies as depicted in bank surveillance images and/or described by witnesses.

c) Communications, messages, emails, conversations, photos, videos, locations, maps, routes, schedules, calendars, notes, or other information related to the planning, preparation, and/or execution of bank robberies.

d) Documents, photos, images, video, communications, emails, messages, or other items bearing the name of, identifying, or referring to the victim financial institutions.

e) Documents, photos, images, video, communications, emails, messages, records, information, or other items indicating the occupancy, rental, use or ownership of any vehicles used in or to facilitate the commission of the crime.

f) Photos, videos, statements, conversations, messages, or other digital content depicting Taylor STEWART or her associates, with the tools or instrumentalities used in the commission of the bank robberies.

g) Documents, receipts, records, search results, communications, photos, videos, communications, or other content related to the purchase and/or use of tools or other items used to facilitate the criminal activity.

h) Notes, documents, messages, images, videos, or communications identifying or containing the names or contact information of associates of Taylor STEWART.

i) Notes, documents, records, messages, images, videos, communications or other items identifying the ideology, motivation, preparation, and planning related to bank robbery and incidental crimes or any other robberies.

j) GPS location and/or positioning information indicating or identifying the location history of the **Subject Cellular Telephones** and/or their users.

k) Calendars, diaries, notes, or other documents used to record schedules, meetings, conversations, or other events related to the planning, preparation, and/or execution of robberies.

l) Diaries, journals, ledgers, photographs, maps, or other personal records indicating the locations or activities of conspirators leading up to the robberies and other planning activities.

m) Maps, routes, location data, pictures, photographs, videos of or related to the offense locations or the locations of the planning, preparation, and/or execution of bank robberies, or travel related to the criminal activity since August, 2021.

n) Documents or other information related to schedule, lodging, and/or travel of co-conspirators and associates.

2

o) Photographs, videos, messages and images showing STEWART, criminal associates, U.S. currency, tools or instruments used in the criminal activity, real and personal property, firearms, or controlled substances.

p) Indicia or ownership, occupancy, rental, or use of vehicles.

q) Account information, settings, and saved usage information for all installed applications, or "apps," on the device. Indicia of account ownership or usage.

r) Any and all information/records that would tend to show that the crime of bank robbery or incidental crimes or other robberies has been committed and/or information or records that would assist in identifying any other individuals associated with these crimes.

s) Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel

assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>Subject Cellular Telephone 1, a black Motorola smartphone device model G7 with IMEI number 354133102336774; and Subject Cellular Telephone 2, a black Samsung smartphone device model SM-J327T with IMEI 352002094988201. | Case No. 21-8290MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113 | Bank Robbery and Incidental Crimes |

The application is based on these facts:

**See attached Affidavit of FBI SA Travis K. Bodily**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Brian E. Kasprzyk *BCK*

_____
*Applicant's Signature*

Travis K. Bodily, Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date: 11/16/21    10:52A

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### *Property to be searched*

This search warrant applies to information and items associated with and stored or maintained in or on **Subject Cellular Telephone 1** described as a black Motorola smartphone device model G7 with IMEI 354133102336774 and **Subject Cellular Telephone 2** described as a black Samsung Model SM-J327T smartphone device with IMEI 352002094988201.  Both of the **Subject Cellular Telephones** are currently in the custody of the Federal Bureau of Investigation and located at the FBI Phoenix Field Office, 21711 North 7th Street in Phoenix, Arizona.

This warrant authorizes the forensic examination of both of the **Subject Cellular Telephones** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

The United States intends to search for, and to seize, any items that constitute fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2113, Bank Robbery and Incidental Crimes.  These violations relate to the activities of Taylor STEWART and her associates, as described in the Affidavit.  The items to be searched for and to be seized include information, data, files, and other content from each of the **Subject Cellular Telephones** described in Attachment A pertaining to the following matters:

a) The engagement and involvement of Taylor STEWART and her associates in bank robbery.

b) Communications, messages, emails, conversations, photos, videos, notes, documents, files or other content indicating, identifying, or depicting the clothing, tools, methods, or instruments used to facilitate bank robberies as depicted in bank surveillance images and/or described by witnesses.

c) Communications, messages, emails, conversations, photos, videos, locations, maps, routes, schedules, calendars, notes, or other information related to the planning, preparation, and/or execution of bank robberies.

d) Documents, photos, images, video, communications, emails, messages, or other items bearing the name of, identifying, or referring to the victim financial institutions.

e) Documents, photos, images, video, communications, emails, messages, records, information, or other items indicating the occupancy, rental, use or ownership of any vehicles used in or to facilitate the commission of the crime.

1

f) Photos, videos, statements, conversations, messages, or other digital content depicting Taylor STEWART or her associates, with the tools or instrumentalities used in the commission of the bank robberies.

g) Documents, receipts, records, search results, communications, photos, videos, communications, or other content related to the purchase and/or use of tools or other items used to facilitate the criminal activity.

h) Notes, documents, messages, images, videos, or communications identifying or containing the names or contact information of associates of Taylor STEWART.

i) Notes, documents, records, messages, images, videos, communications or other items identifying the ideology, motivation, preparation, and planning related to bank robbery and incidental crimes or any other robberies.

j) GPS location and/or positioning information indicating or identifying the location history of the **Subject Cellular Telephones** and/or their users.

k) Calendars, diaries, notes, or other documents used to record schedules, meetings, conversations, or other events related to the planning, preparation, and/or execution of robberies.

l) Diaries, journals, ledgers, photographs, maps, or other personal records indicating the locations or activities of conspirators leading up to the robberies and other planning activities.

m) Maps, routes, location data, pictures, photographs, videos of or related to the offense locations or the locations of the planning, preparation, and/or execution of bank robberies, or travel related to the criminal activity since August, 2021.

n) Documents or other information related to schedule, lodging, and/or travel of co-conspirators and associates.

2

o) Photographs, videos, messages and images showing STEWART, criminal associates, U.S. currency, tools or instruments used in the criminal activity, real and personal property, firearms, or controlled substances.

p) Indicia or ownership, occupancy, rental, or use of vehicles.

q) Account information, settings, and saved usage information for all installed applications, or "apps," on the device. Indicia of account ownership or usage.

r) Any and all information/records that would tend to show that the crime of bank robbery or incidental crimes or other robberies has been committed and/or information or records that would assist in identifying any other individuals associated with these crimes.

s) Records relating to the receipt, transportation, deposit, transfer, or distribution of money, including but not limited to, direct deposit confirmations, wire transfers, money orders, cashier's checks, check stubs, PayPal or other electronic money transfer services, check or money order purchase receipts, account statements, and any other records reflecting the receipt, deposit, or transfer of money

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel

assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Travis K. Bodily, being first duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine two cellular telephones:

- **Subject Cellular Telephone 1** is a black Motorola smartphone device with a cracked screen, with IMEI number 354133102336774 written on the tray for the SIM card. The IMEI indicated it was a model G7; and

- **Subject Cellular Telephone 2** is a black Samsung Model SM-J327T smartphone device with IMEI 352002094988201,

further described in Attachment A (hereafter "**Subject Cellular Telephones**"), in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.      Based on the facts set forth in this Affidavit, my training and experience, and in consultation with other experienced investigators, there is probable cause to believe that violations of Title 18, United States Code (U.S.C.), Section 2113 Bank Robbery and Incidental Crimes have been committed by the users of the **Subject Cellular Telephones**. There is also probable cause to search the **Subject Cellular Telephones** described in Attachment A for evidence of these crimes, as described in Attachment B.

3.      Your Affiant is a Special Agent with the Federal Bureau of Investigation (FBI) and has been appointed as a Special Agent since June 2010.  I am assigned to the Violent Crime Task Force and have been since 2017.  My duties include the investigation

of crimes such as those at issue in this matter. Prior to investigating violent crimes, I investigated counterintelligence and counterproliferation matters for the FBI.

4.     The facts in this Affidavit come from your Affiant's own investigation, training and experience, the investigation of other agents and law enforcement officers, surveillance conducted by law enforcement officers, review of law enforcement databases, the acquisition and review of surveillance footage, and information obtained from witnesses.

5.     This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all the relevant facts known to law enforcement officers.

## **INVESTIGATION**

6.     The FBI Violent Crimes Task Force, along with other local law enforcement agencies has been investigating a series of bank robberies, in violation of 18 U.S.C § 2113, which have occurred since September 23, 2021. Investigators believe the same individual is responsible for this series of bank robberies. During this bank robbery series, a white or Hispanic female has entered the bank and committed bank robbery at four different bank locations within the District of Arizona, to include the cities of Mesa, Scottsdale, and Tempe, Arizona. The suspect has worn the same or similar clothing in each robbery and has made similar written demands for cash. The suspect has also used the same modus operandi in each robbery.

7.     The United States currency stolen during each of the bank robberies described in this Affidavit was federally insured by either the Federal Deposit Insurance Corporation (FDIC) or the National Credit Union Administration (NCUA) at the time of the robberies.

//

### Bank Robbery #1

8.      On September 23, 2021, at approximately 1:42 p.m., an unidentified white or Hispanic female suspect entered the Desert Financial Credit Union located inside the Walmart store at 1606 South Signal Butte in Mesa, Arizona.  Once inside the bank, the suspect approached the victim/teller and passed a handwritten robbery demand note to the victim/teller.  The note demanded money from the cash drawer, and indicated the suspect had a firearm.  The victim/teller complied and gave the suspect $120.00 in United States currency.

9.      Review of bank surveillance footage showed the suspect as a white or Hispanic female, approximately 5'0 to 5'3 tall, 25-35 years of age, 150-160 pounds, long brown hair wearing black and white sneakers, gray and black colored shorts, a black, short-sleeved tee shirt, and black/gray and white bandana.  The suspect was carrying a black, over the shoulder type purse/bag with a gold label or buckle.

10.      Upon obtaining the currency, the subject exited the Walmart.  No vehicles were observed.  The subject did not display a firearm.

### Bank Robbery #2

11.      On October 4, 2021 at 3:38 p.m., an unknown white or Hispanic female entered the U.S. Bank located inside the Safeway store at 1855 North Power Road in Mesa, Arizona.  The suspect approached the victim/teller and asked about opening a new account. The suspect then passed a demand note that stated, "All the $ in the bag. Big Bills, 20-50-100's. I have a gun. No alarms. No dye packs. I am being made to do this. Thank you." The victim/teller complied and gave the suspect $2,160.00 in United States currency.  The suspect placed the currency in a bag she was carrying and exited the store via the south entry/exit doors.

12.    Review of bank surveillance showed the suspect as a white or Hispanic female, 25-35 years of age, 5'3-5'5, 130-150 pounds, brown hair, dark hair, circular tattoo on her right forearm, wearing white/gray sneakers, blue jeans, black short sleeved tee shirt, black and white bandana covering the mouth and nose, and carrying a large, over the shoulder type bag or purse.

13.    No vehicles were observed.  The subject did not display a firearm.

### Bank Robbery #3

14.    On October 9, 2021 at 12:20 p.m., an unknown white or Hispanic female entered the Chase Bank located at 2902 North Scottsdale Road in Scottsdale, Arizona.  The suspect approached the victim/teller and stated she needed to make a withdrawal.  The suspect then passed a handwritten robbery demand note through the partition that read in part, "I'm sorry. This is a robbery. I have a gun in the bag. Empty all the money in your register."  The victim/teller complied and gave the suspect $1,231.00 in United States currency.  The suspect placed the currency in a bag she was carrying and exited the bank. The suspect was observed walking west on the north side of Thomas Road, toward an adjacent business.

15.    Review of bank surveillance showed the suspect as a white or Hispanic Female, 25-35 years of age, 5'3-5'5, 130-150 pounds, brown hair, circular tattoo on her right forearm, wearing white/gray sneakers, blue jeans, black short sleeved tee shirt, black and white bandana covering the mouth and nose, and carrying a large, over the shoulder type bag or purse.

16.    Initially, no vehicles were observed.  The subject did not display a firearm.

//

4

**Further Investigation**

17.    All bank locations were processed for latent fingerprints, but none were developed.   Swabs were obtained from each bank location for possibly future DNA analysis.

18.    Following the bank robbery on October 9th, investigators from Scottsdale Police and the FBI Violent Crime Task Force conducted a canvas for surveillance footage from adjacent businesses.   Investigators discovered the Old Town Smoke Shop, located at 7156 East Thomas Road in Scottsdale, Arizona was equipped with numerous exterior surveillance cameras.   The smoke shop is located in a building to the west of the Chase Bank.   An alley on the west side of the smoke shop leads to the parking lot on the north side of the building.   On October 11, 2021, surveillance footage was obtained from the Old Town Smoke Shop covering the time frame between 12:00 p.m. to 1:00 p.m. on October 9, 2021.   That surveillance footage was reveiwed.

19.    On October 9, 2021 at 12:00 p.m., surveillance footage shows an older model, dark gray colored, Toyota Tacoma pick-up truck turning north into the parking lot from westbound Thomas Road.   The vehicle parks directly in front of, and north of an exterior surveillance camera.   A female subject is observed exiting the rear, passenger side door of the vehicle, and walking to the area just outside the front doors of the smoke shop. The female subject matches the physical and clothing description of the suspect who later robbed the Chase Bank.   An unknown white or Hispanic male, 5'8-5'10, thin build, brown hair, wearing black shorts, white tee shirt, and tattoos covering both arms is observed exiting the truck from the rear passenger seat and walking.

20.    The Toyota Tacoma pick-up truck was observed exiting the parking lot, leaving the male and female behind.   Other exterior store surveillance cameras show the truck driving east on Thomas Road and then entering a parking lot on the south side of

Thomas Road. The truck is observed driving east and westbound on Thomas Road, eventually making a u-turn and re-entering the smoke shop parking lot at 12:14 p.m.

21.     The female is observed standing outside the truck. The male and the female are seen talking and interacting. At some point, the male gives the female a dark colored bandana which he had been wearing. At 12:16 p.m., the female subject is observed walking south on the west side of the building toward Thomas Road. At 12:19 p.m., as the female subject is walking down the alley on the west side of the smoke shop, she is observed tying a dark colored bandana around her face. The female subject is then observed walking east on Thomas Road, toward the Chase Bank, and out of camera view.

22.     At 12:22 p.m., the female is observed walking/jogging westbound on Thomas Road from the Chase Bank, passing in front of the smoke shop, and then turning north in the alley/driveway on the west side of the smoke shop toward the rear parking lot. The female subject is observed getting into the rear, passenger side door of the truck. The truck then exited the driveway, and was observed driving westbound on Thomas Road.

23.     The smoke shop surveillance camera captured the license plate of the vehicle. The vehicle was bearing Arizona license plate 13A8SA. This license plate returns to a 2010, Toyota Tacoma, pick-up truck. The registered owner was listed as Antolina Castillo at an address on Madison Street in Phoenix, Arizona.

24.     Upon obtaining a known photograph of Castillo, she shares similar physical characteristics to the female bank robbery suspect. Castillo has historical addresses in the city of Apache Junction, Arizona. Investigators responded to the historical addresses in Apache Junction, and checked the surrounding area.

25.     On October 11, 2021 at approximately 2:00 p.m., investigators observed the Toyota Tacoma, bearing Arizona license plate 13A8SA in the parking lot of a gas station on the Southeast corner of Apache Trail and Ironwood Drive in the city of Apache Junction.

26.     On October 11, 2021, a search warrant was issued in the District of Arizona authorizing law enforcement to install a tracking device on the Toyota Tacoma.   On October 12, 2021, law enforcement again located the Toyota Tacoma, installed the tracking device, and continued surveillance of the vehicle.

27.     On October 13, 2021, investigators reviewed the vehicle tracking information of the Toyota Tacoma for the previous night.  It was determined the vehicle had been at the Red Roof Inn located at 2135 West 15th Street in Tempe, Arizona.  An investigator made contact with management at the Red Roof Inn and showed surveillance images of the female bank robbery suspect to the employee.   The hotel employee recognized the female as a person who had been a recent guest of the hotel.  The employee advised that on Monday, October, 11, 2021, the female and her boyfriend were kicked out of the hotel for using drugs in the room.  The female was identified through hotel records as Taylor Stewart (STEWART).

28.     A check of the Arizona Motor Vehicle Division (MVD) database located driver's license information and a photo for STEWART.  Review of the biographical information and photo of STEWART revealed similarities and physical characteristics matching those of the female bank robbery suspect.

29.     Investigators continued to maintain surveillance in the vicinity of the Red Roof Inn.  While maintaining surveillance, an investigator observed a white or Hispanic male with tattoos on his arms exit the Extended Stay America hotel located at 2165 West 15th Street in Tempe, Arizona.  This male matched the physical description of the unknown male captured on the Old Town Smoke Shop surveillance video with the female suspect and the Toyota Tacoma on October 9, 2021.  Shortly thereafter, a female matching the description of STEWART exited the Extended Stay America hotel and met up with the male.

30.     Investigators observed STEWART and the male get into a vehicle, driven by another unknown male. It is noted that this vehicle was not the Toyota Tacoma. The vehicle traveled to the CVS pharmacy located at 802 South Mill Avenue in Tempe, Arizona. At the CVS, the male driver appear to have purchased some food or candy items. The two males and STEWART were observed standing outside the CVS while the food items were consumed.

31.     Investigators noted that a Chase Bank was located at 830 South Mill Avenue in Tempe, Arizona, across the parking lot just south of the CVS where STEWART and the males were standing.

**Bank Robbery #4**

32.     Investigators observed STEWART cover her face with a dark colored bandana, similar to the one observed in the previous bank robberies, and put on sunglasses before walking quickly towards the Chase Bank located at 830 South Mill Avenue in Tempe, Arizona. STEWART was carrying a dark colored bag similar to that used in the other three bank robberies. STEWART entered the bank and approached the business transaction teller and presented a robbery demand note which read "Hand Over The Money And I Won't Shoot, Total is 4,320."

33.     The victim/teller realized it was a robbery and complied with the demand note providing STEWART with United States currency. Approximately $3,700 was taken in this robbery. STEWART took the money and fled the bank on foot. A law enforcement officer confirmed that STEWART had robbed the bank at approximately 12:38 p.m.

34.     After exiting the bank, law enforcement officers apprehended STEWART and took her into custody at approximately 12:40 p.m. Law enforcement also detained the male who had been with STEWART. The male was identified as Kevin Holt. While detained, Holt made spontaneous statements that STEWART had gone into the bank to

pick up a money transfer that her father had sent her. Holt said he and STEWART were staying in room #301 at the Extended Stay Hotel, 2165 West 15th Street in Tempe, Arizona. Holt also said that STEWART had a drug problem. Investigators also seized both of the **Subject Cellular Telephones** from him.

35.     STEWART and Holt were transported to the Phoenix Police Department to be interviewed. STEWART was provided with her *Miranda* Rights warning and advised she understood her rights and was willing to speak to investigators without an attorney.

36.     During the interview, STEWART was shown still images from surveillance video from the four bank robberies referenced above. STEWART made statements admitting that she had committed all four of the bank robberies referenced in this Affidavit. STEWART said that she had written the demand notes herself. She said she threatened the gun to scare the victim tellers into giving her the money. STEWART said that no one was forcing her to do these robberies. STEWART said that Holt was not involved in the bank robberies. STEWART had told Holt that she was getting money that her father had sent to her. STEWART stated that she had been staying at the Extended Stay Hotel with Holt, but she could not remember the room number.

37.     On October 29, 2021, Holt contacted your Affiant via telephone. During that interaction, Holt provided information regarding the **Subject Cellular Telephones** which investigators had previously seized from Holt on October 13, 2021. Holt described one device as a Motorola G7 (**Subject Cellular Telephone 1**) and the other a Samsung device (**Subject Cellular Telephone 2**.) Holt advised that STEWART had access to and used both of the **Subject Cellular Telephones** while they were together. Holt indicated STEWART likely used **Subject Cellular Telephone 1** more than **Subject Cellular Telephone 2**. Holt said he believed there may be several text messages of investigative interest on those phones that STEWART had sent. Holt said that at the time he did not think anything of the messages but, following STEWART's on October 13, 2021, Holt

began to understand the context that those messages might be in. Holt did not know with whom the text messages were sent or received. He described them as being with a phone number that was not associated with a contact name in the phone. Holt did not specify if only one or both of the cell phone devices contained the messages.

38.     Based on the fact that STEWART had access to and used both of the **Subject Cellular Telephones** and the fact that Holt indicated there were text messages on the **Subject Cellular Telephones** that would be of investigative interest to law enforcement, your Affiant finds it reasonable to believe that information and evidence relevant and material to this investigation will be found on the **Subject Cellular Telephones** which were seized from Holt following the bank robbery committed by STEWART on October 13, 2021.

### Digital Evidence Stored Within a Cellular Telephone

39.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the **Subject Cellular Telephones**. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

40.     *Probable Cause:* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored in **Subject Cellular Telephones** for the following reasons:

a.  Based on my knowledge, training and experience, and in consultation with other experienced investigators, your Affiant is aware that individuals involved in criminal activity, to include bank robberies, often maintain at their residences, vehicles, and on their property, tools and other implements they used during or in furtherance of the commission of the crime. Individuals involved in robberies will also maintain notes or other documents

containing the names and contacts of their associates. These individuals will also maintain notes or other documents related to the planning, preparation and execution of the crime or related to the victim. Sometimes bank robbers take pictures or videos of themselves, their fellow conspirators, clothing or instruments used in the commission of crimes, as well as money or property obtained during the course of the robberies and post those pictures or videos on social media websites, store them in cloud-based accounts, which are connected to their cell phone, or share them via cell phone applications and messaging services. I also know that criminals, to include bank robbers, will use various means of communication, to include telephonic and/or other electronic means, to communicate with fellow conspirators and share information, including the use of messenger service applications on their cell phones. These communications may take place at various stages of the commission of the crime, i.e, the planning of, execution of, or after the crime.

b. Based on my knowledge, training and experience, and in consultation with other experienced investigators, your Affiant knows that a cell telephone, cellular phone, or mobile telephone is a handheld wireless device used for voice communication through radio signals. These telephones send signals through networks of transmitters/receivers called "cells," enabling communication with other cellular telephones and traditional "land line" telephones. A cell phone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cell phones now offer a broad range of capabilities. These capabilities include: storing names, phone numbers, addresses and other contact information in electronic "address books" or "contact lists;" sending, receiving, and storing text messages, multimedia messages, email, and other message types; taking, sending,

receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, notes, appointments, and other information on personal calendars; accessing social media sites and applications; and accessing and downloading information from the Internet. With the capability to access the Internet, data files, logs and other information are often stored or maintained on the cell phone. Cell phones may also include global positioning system (GPS) technology for determining location of the device. Additionally, most cell phones offer the ability to run applications or computer software developed for use on mobile devices. These applications give cell phones many of the same capabilities as personal computers. It is common for cell phone applications to utilize or keep the GPS or location history information. Cell phones and mobile devices can be used to store data and files, either on internal storage media or on removable media such as a memory card.

c.  Based on your Affiant's training and experience, individuals rely heavily on their cellular telephones and their communications in their day-to-day activities and actions. These communications are often in the form of telephone calls, voice messages, SMS text messages, mobile messaging service applications, photo sharing, social media, and other similar communications. Records and copies of such communications are often kept on the cell phone or mobile device. Individuals also rely heavily on their cell phones and mobile devices to maintain their "address books" and "contact lists" and for notetaking, calendaring, and navigation.

d.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular

12

telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

e. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

f. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data

13

contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

g. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

41. *Forensic Evidence:* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the **Subject Cellular Telephones** because:

a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and

malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password

protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

42.  *Nature of Examination:* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise

copying the contents of the **Subject Cellular Telephones**, including the use of computer-assisted scans.

## AUTHORIZATION REQUEST

43.     Based on the foregoing, your Affiant submits there is probable cause and reason to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. § 2113 Bank Robbery and Incidental Crimes, are likely to be found in the contents of the **Subject Cellular Telephones** further described in Attachment A, as those items are relevant and related to the ongoing investigation of a series of bank robberies.

44.     Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant.

Travis K. Bodily
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically this ⎯⎯ day of November, 2021.

HONORABLE JOHN Z BOYLE
United States Magistrate Judge

17